UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JEAN GERMAIN,

    Plaintiff,

v.

BOBBY P. SHEARIN, *Warden*,

    Defendant.

Civil Action No. TDC-16-2685

**MEMORANDUM OPINION**

Plaintiff Jean Germain, presently confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 asserting that in 2013, prison officials failed to provide him with adequate food consistent with the timing and requirements of fasting during Ramadan, in violation of his right under the First Amendment to the United States Constitution to free exercise of religion, his right under the Eighth Amendment to be free from cruel and unusual punishment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–2000cc-5 (2012). Now pending is a Motion for Summary Judgment filed by Defendant Warden Bobby P. Shearin ("the Warden"). Germain opposes the motion and moves for appointment of counsel. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Warden's Motion for Summary Judgment will be GRANTED, and Germain's Motion for Appointment of Counsel will be DISMISSED AS MOOT.

## BACKGROUND

This is the second case in which Germain has asserted the same or similar claims. His first case, filed in 2013, was dismissed without prejudice in 2016 by the United States Court of Appeals for the Fourth Circuit based on that court's determination that Germain had failed to exhaust administrative remedies. *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (*"Germain I"*) (affirming as modified the district court's order granting summary judgment for defendants).

In this second case, filed in July 2016, Germain filed a verified Complaint in which he asserted that he had filed an administrative remedy procedure grievance ("ARP") that was dismissed and that he appealed that decision to the Commissioner of Correction. Then, although he did not receive a receipt for the filing of his appeal, he nevertheless filed a further appeal to the Inmate Grievance Office ("IGO"). Germain stated that the IGO "consistently denies plaintiff relief by, either, ignoring plaintiff's grievances or by dismissing without a hearing on bogus grounds." Compl. ¶ 7, ECF No. 1. In response to this Complaint, Warden Shearin filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, in which he argued, in part, that Germain had still failed to exhaust his administrative remedies. The Court (Motz, J.), construing the Warden's motion as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), granted the motion after finding that Germain had failed to exhaust administrative remedies. Germain appealed that dismissal to the Fourth Circuit, which vacated the dismissal and remanded the case. *Germain v. Shearin*, 725 F. App'x 225, 227 (4th Cir. 2019) (*"Germain II"*). The Fourth Circuit held that because the district court had treated the motion as a Motion to Dismiss, it was required to credit Germain's assertion in his verified Complaint that he had completed all three steps of the ARP process. *Id.* at 227. The court noted that its ruling did "not eliminate the

possibility that Germain's claim that he exhausted administrative remedies could ... be defeated in a properly filed motion for summary judgment." *Id.* at 227 n.2. Upon remand of the case to this Court, the Warden filed a Motion for Summary Judgment in which he again asserts that Germain failed to exhaust administrative remedies.

The record establishes, and the parties do not dispute, that on July 13, 2013, Germain submitted ARP No. NBCI-1870-13, in which he complained about the denial of meals during Ramadan. That ARP was returned to Germain on July 19, 2013, with the stamped notation "Dismissed for procedural reasons: Pending Resubmission per DCD 185-002VI.L.9. Additional information is needed to investigate your request. Please resubmit by 7-31-13 and include the following information." Mot. Summ. J. Ex. 2 at 4, ECF No. 37-3. Below the stamp are the handwritten questions, "Are you properly receiving your Ramadan meals? Do you have the option to accept a lunch meal? Whos[e] decision is it to fast? Provide documentation in regards to how [remainder illegible]." *Id.* On July 31, 2013, Germain supplemented the ARP by answering that he was not properly receiving Ramadan meals, that he had no option to accept a lunch meal, and that it was his decision to fast. As to documentation, Germain simply stated that the Eighth Amendment and RLUIPA "are my documentation. Go read them." *Id.* at 3. Germain's ARP was then dismissed, with the stamped notation, "Dismissed for procedural reasons Final per DCD 185-003.VI.N.2. Failed to resubmit the request in accordance with the coordinator's instructions." *Id.*

According to the Warden, at that point Germain abandoned the ARP. In support of that assertion, the Warden provides a declaration from a records custodian who asserts that there is no record of Germain filing an appeal of ARP No. NBCI-1870-13 with the Commissioner of Correction. The Warden also provides the declaration of Samiyah Hassan, an administrative officer for the IGO, stating that the IGO has no record of any appeal of ARP No. NBCI-1870-13

3

or any other complaint or grievance relating to inadequate Ramadan meals at NBCI in 2013. Hassan further asserts that Germain filed six unrelated appeals with the IGO during 2013.

In opposing the Motion, Germain, has submitted an affidavit in which he asserts that on August 4, 2013, he mailed his appeal of the ARP to the Commissioner of Correction by first-class mail, but that he never received the "Part-C" receipt from the Commissioner acknowledging receipt of the appeal or any response to his appeal from the Commissioner of Correction. In his declaration, Germain does not assert that he filed a grievance or appeal with the IGO.

## DISCUSSION

In his Motion for Summary Judgment, the Warden asserts that the record establishes that Germain did not exhaust all administrative remedies, specifically the established process for appealing ARPs. In his memorandum in opposition to the Motion ("Opposition"), Germain argues that this Court cannot simply reject his representations that he filed an appeal with the Commissioner of Correction. Germain also asserts that in *Germain I*, the Fourth Circuit found that Germain sent an appeal to the Commissioner of Correction on August 4, 2013, such that the Warden is collaterally estopped from arguing otherwise in this Motion.

### I.    Legal Standard

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football*

*Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

Because Germain is self-represented, his submissions are liberally construed. *See Erickson*, 551 U.S. at 94. Nevertheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526.

## II. Exhaustion of Administrative Remedies

The Warden asserts the affirmative defense that Germain has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1197e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to

5

aggrieved inmates"; (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison administrators actively "thwart" inmates from filing grievances. *Ross*, 136 S. Ct. at 1859–60.

In Maryland prisons, for the type of grievance asserted by Germain, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 to -210 (2002); Md. Code Regs. ("COMAR") 12.02.28.02(B)(1) (2018) (defining the ARP). First, a prisoner must file a grievance, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10–206, 10–210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10–210.

Here, the Warden has submitted evidence, in the form of declarations from relevant personnel, establishing that neither the Commissioner of Correction nor the IGO has any record of receiving an appeal from Germain relating to ARP No. NBCI-1870-13, which supports the conclusion that Germain failed to administratively exhaust the claims in that grievance. The evidence submitted by Germain with his Opposition does not refute that conclusion. In both his Opposition and his attached affidavit, Germain asserts that he filed an appeal of ARP No. NBCI-1870-13 to the Commissioner of Correction, but he no longer claims that he filed a further appeal with the IGO. Instead, he states that his exhaustion efforts stalled at the Commissioner of Correction stage, arguing that the Fourth Circuit expressly found that he had mailed an appeal to

6

the Commissioner of Corrections on August 4, 2013 such that collateral estoppel precludes any claim that he did not file that appeal. The Court notes that Germain's collateral estoppel argument fails because the Fourth Circuit made no such finding, but instead simply accepted Germain's allegations as true, as required when resolving a Motion to Dismiss. *See Germain II*, 725 F. App'x at 226-27 (noting that in reviewing the district court's order it was "accepting as true the complaint's factual allegations" pursuant to Rule 12(b)(6)). The point, however, is incidental to resolution of the present Motion. Where, in his Opposition, as well as the affidavit appended to it, Germain no longer claims that he filed an appeal to the IGO but instead takes the position that his appeal efforts stalled at the Commissioner of Correction stage, he has not refuted the Warden's evidence that no appeal to the IGO was filed. The Court therefore finds that Germain did not exhaust administrative remedies.

Even if the Court reaches back to consider Germain's original statement in his verified Complaint that he submitted an appeal of his ARP with the IGO, the result is the same. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge"). First, it is undisputed that even if he filed such an appeal, Germain filed his Complaint in this case before the IGO issued a decision. *McKinney v. Carey*, 311 F.3d 1198, 1199–1200 (9th Cir. 2002) (holding that the PLRA required "presuit exhaustion," consistent with holdings in the First, Second, Third, Seventh, Tenth, Eleventh, and D.C. Circuits); *Germain I*, 635 F. App'x at 234 (citing *McKinney* and stating that "[e]xhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint").

Second, the Court finds that the record does not support a finding that Germain actually appealed to the IGO. The issue of exhaustion of administrative remedies under the PLRA "is analogous to subject matter jurisdiction, personal jurisdiction, venue, and abstention, in that all these matters are typically decided at the outset of the litigation" and should be decided "as early as feasible." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Exhaustion may be decided either on summary judgement on or an unenumerated Rule 12(b) motion with "resolution by the judge of disputed facts." *Compare id.* (considering the issue of PLRA exhaustion on summary judgment) *and Dillon*, 596 F.3d 260, 271 (5th Cir. 2010) (same) *with Bryant v. Rich*, 530 F.3d 1368, 1376–77 (11th Cir. 2008) (considering the issue on a Rule 12 motion akin to a motion for personal jurisdiction). Specifically, "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Albino*, 747 F.3d at 1170; *Bryant*, 530 F.3d at 1376–77 (allowing judges, in addressing a PLRA exhaustion claim, to "resolve factual disputes so long as the factual disputes do not decide the merits"). To treat exhaustion otherwise would "unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement," which was to "'reduce the quantity and improve the quality of prisoner suits.'" *Bryant*, 530 F.3d at 1377 (quoting *Porter*, 534 U.S. at 525).

In the analogous setting of personal jurisdiction, a court may decide that issue without discovery or an evidentiary hearing. *See Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016). Here, where neither discovery nor an evidentiary hearing was requested, the Court concludes that the record evidence establishes, even viewing the evidence in the light most favorable to Germain under the more stringent summary judgment standard, that he did not exhaust administrative remedies. *See Bryant*, 530 F.3d at 1377 n.16 (holding that a district court may resolve material

questions of fact on submitted papers for the PLRA's exhaustion requirement). Defendants have submitted declarations establishing that neither the Commissioner of Correction nor the IGO has any record of any appeal of Germain's 2013 ARP relating to Ramadan meals. Thus, to accept Germain's position, the Court would have to conclude that not one, but two different written appeals were either lost entirely or deliberately not processed. Germain provides no evidence beyond his own speculation in support of such a conspiracy, and the existence of such a conspiracy is belied by Germain's ability in numerous other cases to make unencumbered use of the entirety of the ARP appeals process. Specifically, in 2013 alone, he filed six separate appeals to the IGO that were processed and are identifiable in the IGO's records. Germain has also routinely had his appeals to the IGO resolved such that administrative remedies were fully exhausted and he could pursue federal court litigation. *See, e.g., Germain v. Shearin*, TDC-13-0382 (D. Md. Feb. 2013); *Germain v. Bishop*, TDC-15-1421 (D. Md. May 18, 2015); *Germain v. Bishop*, TDC-17-1289 (D. Md. May 11, 2017). Where the IGO has consistently received, recorded, and processed his appeals, Germain's uncorroborated assertions that somehow both his appeal to the Commissioner of Correction and his appeal to the IGO vanished without a trace does not create a genuine issue of material fact.[1] The Court therefore finds that Germain did not appeal ARP No. NBCI-1870-13 to the IGO.

To the extent that Germain may argue that his failure to exhaust can be excused because the ARP process was unavailable within the meaning of *Ross*, the evidence does not support such

---

[1] The Court notes that even if summary judgment were denied based on the favorable standard for Germain, the next step would be a determination by the Court, not a jury, of the disputed factual question of whether Germain actually filed an appeal with the IGO which, in the absence of a timely request for an evidentiary hearing, would be decided on the same record currently before the Court under a preponderance of the evidence standard. *See Dillon*, 596 F.3d at 273; *Bryant*, 530 F.3d at 1377 & n.16.

a finding. Even accepting as true Germain's assertion that he mailed an appeal to the Commissioner of Corrections, Germain makes no allegation that the appeal procedure is too opaque to be used. Rather, as discussed above, IGO records reveal that Germain filed six grievances with the IGO in 2013 alone, establishing that he is aware of how to use that procedure. Likewise, there is no evidence that prison administrators actively thwarted Germain from filing grievances. Rather, the evidence shows that Germain's first ARP on this issue resulted in a prompt request for more information from Germain about the specifics of his grievance. Although he asserts that he did not receive a receipt for his appeal to the Commissioner of Correction on this issue, there is no evidence that an appeal to the IGO would not have been possible, particularly where Germain still had access to the underlying ARP and its case number. More importantly, the fact that the IGO received and accepted six other grievances from Germain in the same year refutes the claim that he is generally thwarted from using the administrative process.

Finally, the evidence does not support a finding that the ARP process is effectively unavailable because correctional officers are "unable or consistently unwilling to provide relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859–60. Germain's conclusory statement in his Complaint that "the IGO consistently denies plaintiff relief by, either, ignoring plaintiff's grievances or by dismissing them with a hearing on bogus grounds" is unsupported by any factual evidence. Compl. ¶ 17. Germain does not describe these other grievances or provide evidence to show that the Commissioner of Correction "disclaims the capacity to consider [ARPs]," or that administrative officials with apparent authority "decline ever to exercise it." *Ross*, 136 S. Ct. at 1859. Germain's robust history of grievance appeals instead illustrates that prison officials routinely process prisoner grievances. The consistent operation of the ARP process is further confirmed by the large number of exhausted claims Germain has brought in this Court. *See, e.g.*,

*Germain v. Shearin*, TDC-13-0382 (D. Md. Feb. 2013); *Germain v. Bishop*, TDC-15-1421 (D. Md. May 18, 2015); *Germain v. Bishop*, TDC-17-1289 (D. Md. May 11, 2017). The Court therefore concludes that, based on the record submitted on summary judgment, Germain has not shown that his failure to exhaust administrative remedies was due to the unavailability of the administrative process. *See Ross*, 136 S. Ct. at 1859 (finding that a grievance process is incapable of use only when "the facts on the ground demonstrate that no such potential exists" for some relief to be granted).

Because the Court finds that Germain did not file an appeal with the IGO and that the appeals process was not unavailable to Germain, the Court concludes that Germain has failed to exhaust his claim. The Warden's Motion for Summary Judgment will be granted.

In light of this determination, Germain's Motion for Appointment of Counsel will be dismissed as moot.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be GRANTED. Germain's Motion for Appointment of Counsel will be DISMISSED AS MOOT. A separate Order shall issue.

Date: September 19, 2019

THEODORE D. CHUANG
United States District Judge